IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MINDBRIDGE.COM, INC. d/b/a | : | CIVIL ACTION |
| MINDBRIDGE SOFTWARE, | : | NO. 06-4985 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| SCOTT V. TESTA | : | |

**MEMORANDUM**

O'NEILL, J.                                                                                                                                                     November 21, 2008

**I.    Background**

Plaintiff filed a complaint against defendant on November 13, 2006. In Count I plaintiff claims that defendant violated the Lanham Act, 15 U.S.C. §1125(a), by infringing upon plaintiff's trademarked internet domain names and by using the domain names for his personal benefit and to plaintiff's exclusion. Count II of the complaint alleges that defendant breached his fiduciary duty by willfully misappropriating company funds for his personal use. The allegations in Count III of the complaint are similar to those in Count II in that plaintiff asserts that defendant converted company assets for his personal use. Count IV is a claim for tortious interference with contractual relations in which plaintiff claims to have suffered a loss of business and revenues from its existing customers due to defendant's reallocation of the company's website address. Count V of the complaint is a claim for misappropriation of trade secrets. Therein plaintiff alleges that defendant misappropriated trade secrets by removing plaintiff's customer lists. The final count of plaintiff's complaint, Count VI, is a claim for replevin in which plaintiff alleges that defendant refused to return plaintiff's software. Plaintiff seeks in excess of $500,000.00 in damages for both Counts II and III and also seeks unspecified compensatory

and punitive damages for the remaining counts.

Defendant filed a counterclaim which included two counts for breach of contract and a third count for civil conspiracy and extortion. Defendant's first count for breach of contract is based upon his allegation that plaintiff executed but failed to remit payment on a $300,000.00 promissory note issued to defendant. Defendant's second claim for breach of contract is based upon his claims that he advanced plaintiff more than $800,000.00 and should be reimbursed for the monies advanced. I dismissed defendant's claim for civil conspiracy and extortion in my Memorandum and Order dated July 17, 2007.

Following a non-jury trial held from February 25-27, 2008, and after review of the parties' post trial briefs I now enter the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a). For the reasons set forth below, I find that plaintiff has not proven by a preponderance of evidence that: (1) defendant breached any fiduciary duty owed to plaintiff; (2) defendant converted plaintiff's assets for personal use; (3) plaintiff suffered damages as a result of defendant's interference with plaintiff's contractual relationships; (4) defendant misappropriated plaintiff's trade secrets; and, (6) defendant did not return plaintiff's software. I further find that defendant has proven by a preponderance of the evidence that plaintiff breached the terms of a valid promissory note, defaulted thereon, and is liable to defendant for the damages arising therefrom. Defendant did not, however, prove by a preponderance of the evidence that plaintiff breached any other contract with defendant. Therefore, I will award defendant $300,000.00 in damages.

**II.     Findings of Fact**

The following facts were established at trial.

    A.     Plaintiff's Formation and Organization Structure

Plaintiff was incorporated under the laws of the Commonwealth of Pennsylvania in December 1996. Plaintiff is an intranet software development company. It develops, sells, and supports network software. From the date of incorporation until the events giving rise to this suit David Christian was plaintiff's President and Chief Technology Officer. Christian was primarily responsible for managing the technical aspects of the company including product development and customer support. Defendant was plaintiff's Chief Operating Officer. He was primarily responsible for managing the company's daily operations including marketing, sales, and managing the company's finances and record keeping. The parties agree that neither Christian or defendant were entitled to receive compensation from plaintiff nor were they considered employees of the company. Defendant and Christian were plaintiff's primary principals from its inception through June 2006.

    B.     Financial Management and Record Keeping

Neither defendant nor Christian are trained accountants, bookkeepers, or financial managers. Plaintiff employed a bookkeeper from 1996 through 1998 or 1999. Plaintiff also hired Mark Dorfman, C.P.A., on a part-time basis. Dorfman received compensation and a minority stock position. Although defendant was not qualified to handle plaintiff's financial affairs, defendant and Christian nevertheless agreed that in conjunction with Dorfman defendant would manage plaintiff's finances. Defendant managed plaintiff's finances from 1996 through July 2006. The only accounting records defendant maintained for plaintiff's financial transactions were plaintiff's bank statements. Defendant utilized

banks statements, a checkbook software program, and online banking to keep track of plaintiff's finances. Defendant did not maintain a cash disbursement journal. Plaintiff did not have a corporate credit card.

      C.      <u>Christian and Testa Make and Receive Advances to and From Plaintiff</u>

Plaintiff regularly operated at a loss with gross receipts exceeding gross expenses for many years. Plaintiff had serious cash flow deficits and difficulties. Both Christian and defendant utilized personal funds, lines of credit, and credit cards to transfer money to plaintiff or to make purchases for the benefit of the company. Defendant's wife and mother also provided defendant with money which was used to help plaintiff meet its financial obligations. Neither Christian nor defendant provided the court with much documentary evidence of all of the personal transactions they made.

While plaintiff received cash and other financial assistance from defendant and Christian, plaintiff's funds were also utilized to pay their personal expenses. At times Plaintiff's funds were utilized to pay defendant's mortgage, credit card payments, and to transfer money directly to defendant's personal checking accounts. Plaintiff's funds were also used to advance money to Christian and to purchase a personal vehicle for Christian. Plaintiff's counsel stipulates that Christian received a total of at least $145,000.00 from plaintiff. Both defendant and Christian considered their contributions to plaintiff as advances. They also considered the money received from plaintiff as repayment of advances made to plaintiff.

      D.      <u>Puckette Joins Plaintiff as an Officer</u>

In 2006 plaintiff posted a job opening for a Chief Executive Officer. Richard Puckette responded to the posting and in July 2006 became plaintiff's CEO on an interim basis. Puckette

accepted the position without compensation and offered to work on an interim basis to determine whether he would be interested in working as an officer on a permanent basis. Also in July 2006, defendant informed Puckette that plaintiff was unable to make payroll. Defendant and Christian requested that Puckette loan plaintiff $10,000.00 to meet its payroll expenses. In response to defendant's request, Barnacle Group, LLC, a company owned by the Puckette family, loaned plaintiff $10,000.00.

### E. Stock Purchase Agreement

Plaintiff continued to have substantial financial difficulties. On August 2, 1006, Barnacle Group and plaintiff entered in to a Stock Purchase Agreement. Barnacle Group purchased over 6 million shares of plaintiff's stock for $100,000.00 (including the aforementioned loan). As a result of the Stock Purchase Agreement Christian, defendant, and Barnacle became equal shareholders. Defendant conditioned his approval of the Stock Purchase agreement upon plaintiff's willingness to provide him with a Note in the amount of $300,000.00. Defendant informed Puckette he advanced plaintiff $300,000.00 which remained outstanding when the Note was executed. Although they had the opportunity, neither Christian, Puckette nor any other officer or employee of plaintiff conducted due diligence to determine or verify the amount defendant claimed was due. Defendant did not keep accurate records of the amounts owed him. Nevertheless, he requested that plaintiff agree to the amount of $300,000.00. He also requested to reserve the right to provide plaintiff with documentation to prove that he was due more money thereby increasing the amount of the Note if appropriate. Puckette and Christian agreed to the conditions and executed the Note. The terms of the Note provide that plaintiff is required to repay defendant 48 monthly installments of $7,536.94. Payments were to

begin on September 1, 2006.

    F.    <u>Defendant's Removal</u>

After plaintiff and Barnacle executed the Stock Purchase Agreement Christian and Puckette went to Commerce Bank, plaintiff's banking institution, to deposit the $90,000.00 Barnacle paid in exchange for the shares of stock. Immediately thereafter, and during the remainder of the week of August 3, 2006, both Christian and Puckette went on pre-planned summer vacations. On August 4, 2006, and August 8, 2006, defendant wrote checks from plaintiff's account to himself in the amount of $10,000.00 and $50,000.00, respectively. He deposited the checks into his personal account. Defendant testified that the money was for loan repayment. Defendant did not inform Christian or Puckette that he wrote the checks. Both checks are dated as of August 1, 2006.[1]

When Puckette returned from vacation on August 14, 2006, he discovered that plaintiff's bank account was overdrawn. Puckette informed Christian and they attempted to contact defendant. Defendant was on vacation and did not respond to Christian and Puckette's telephone calls or e-mails. Defendant eventually responded to Christian and Puckette by inquiring as to whether they wanted to buy him out of the company. Christian and Puckette declined to purchase defendant's shares. Instead, they began an investigation which focused on defendant's management of plaintiff's financial affairs. Soon thereafter plaintiff held a shareholder's meeting to discuss removing defendant as an director. Puckette was not able to locate plaintiff's bylaws. During the meeting defendant argued that the bylaws

---

[1] Plaintiff asserts that defendant backdated the checks in an effort to make it appear that the checks pre-dated August 3, 2006. On August 3, 2006, defendant, Christian, and Puckette visited Commerce Bank and executed a new Business Signature Card form which required the authorization of two officers instead of one.

required an 80% majority to remove him from plaintiff's board of directors. Defendant admitted that he retained plaintiffs' copy of the bylaws to assist him in the voting dispute during the August 2006 meeting. On August 31, 2006, plaintiff held an emergency shareholder meeting and removed defendant from the board of directors. On September 8, 2006, Puckette sent defendant a letter informing him that plaintiff considered the $300,000.00 Note to be null, void, and of no effect. Plaintiff never made any payments on the Note.

Puckette and Christian notified the West Norriton, Pennsylvania Police Department of defendant's unauthorized withdrawal of $60,000.00. Defendant was arrested and charged with crimes related to the withdrawals on September 21, 2006. Defendant eventually returned the $60,000.00 to plaintiff. On September 22, 2006, defendant re-registered plaintiff's internet domain names to himself and also redirected the domain names from plaintiff's servers and "parked" them. The parked domains did not advertise, redirect customers to a different active website, or solicit business from redirected customers. Defendant restored plaintiff's access to the domain names in January 2007.

Once Puckette and Christian removed defendant from the board of directors they conducted a complete analysis of plaintiff's financial books and records. Puckette attempted to reconcile the advances defendant made against the withdrawals made. Because defendant did not maintain a consistent record of plaintiff's financial transactions, Puckette was only able to utilize plaintiff's bank statements during his reconciliation process. Defendant claimed to have advanced plaintiff in excess of $643,000.00 from 1996 through August 2006. Defendant did not provide Puckette with copies of all of the credit card transactions he claimed he made for plaintiff's benefit. At the end of his review Puckette concluded that defendant only advanced plaintiff a total of $489,901.25. Puckette also

reviewed plaintiff's bank statements from 1996 through 2006. When he analyzed the bank statements, Puckette charged every transaction that appeared to benefit defendant or his family against defendant unless Puckette had received documentation to support a business purpose for the expenditures. During the period in which he was in control of plaintiff's financial affairs, defendant made hundreds of electronic funds transfers between his bank accounts and plaintiff's. He transferred money into and from plaintiff's account. Puckette determined that defendant utilized plaintiff's funds to make mortgage payments, student loan payments, and payments for vehicle maintenance. Puckette determined that defendant's non-business related advances exceeded the advances defendant made to plaintiff by $364,525.77. Plaintiff admits that its analysis did not give defendant credit for electronic transfers made by defendant to plaintiff's bank account.

III.    **Conclusions of Law**

This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331 as plaintiff has asserted claims under the Lanham Act, 15 U.S.C. § 1051, et seq.. This court also has supplement jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

A.    Lanham Act

During trial I granted a directed verdict in defendant's favor on this claim due to plaintiff's failure to produce in evidence in support thereof. In order to establish a violation of Section 43(a) of the Lanham Act, a plaintiff must demonstrate that: 1) it owns the disputed mark; 2) the mark is valid and legally protectable; and 3) the infringing party's use of the mark to identify its goods or services is likely to created confusion concerning the origin of those goods or services. Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 437 (3d Cir. 2000). As an initial matter, I

conclude that plaintiff owned its domain names and that they are valid and legally protectable interests under the Lanham Act.  However, plaintiff failed to prove that defendant infringed upon plaintiff's use of the domain names or likely created confusion concerning the origin of plaintiff's services.  Defendant admitted that he re-registered the domain names from September 2006 through January 2007. However, plaintiff did not produce any evidence which demonstrated actual or likely confusion.  There are no statements by plaintiff's clients or customers that they attempted to access the domain names and were unable to reach plaintiff.  There is no evidence that plaintiff lost business as a result of defendant's conduct.  Moreover, plaintiff did not produce any evidence that defendant acted as plaintiff's competitor during the relevant period.

      B.      <u>Breach of Fiduciary Duty</u>

Plaintiff avers that because he was one of plaintiff's officers and directors defendant owed plaintiff a fiduciary duty.  Plaintiff maintains that defendant breached his fiduciary duty by falsely representing that he was owed at least $300,000.00 from plaintiff and in procuring the $300,000.00 Note.  Therefore, plaintiff concludes that the Note is voidable and that plaintiff may disavow it.  Plaintiff further maintains that defendant breached his fiduciary duty by engaging in self dealing, commingling corporate and personal funds, and failing to keep accurate and contemporaneous financial records. Determining whether defendant is liable to plaintiff in any manner as a result of his management of plaintiff's financial affairs is the crux of this matter.  I conclude that while defendant was admittedly unqualified to manage plaintiff's finances in a manner consistent with standard accounting and bookkeeping practices, he did not breach his fiduciary duty to plaintiff. It is clear that defendant's management of plaintiff's financial affairs was haphazard, disorganized, sloppy, and poorly documented.

The company did not follow standard accounting practices; thus, the extremely informal income, expense, and reimbursement procedures continued for the duration of the business by agreement of Christian and defendant.  However, the test for liability for breach of fiduciary duty is whether a director was unjustly enriched by his or her actions.  Seaboard Industries v. Monaco, 276 A.2d 305, 309 (Pa. 1971); also Bailey v. Jacobs, 189 A. 320, 324 (Pa. 1937).  I conclude that defendant was not unjustly enriched.[2]  Defendant did not receive or retain a benefit from plaintiff for which he did not pay value.  Furthermore, although plaintiff states that defendant wrongfully reimbursed himself and removed money from the business for personal use, plaintiff did not offer any proof that the monies removed were for personal versus company expenses or that the withdrawals were not repayments of advances defendant made.

Essentially, Christian and defendant decided to form plaintiff corporation and to have both principals function as equal partners.  Christian operated as plaintiff's technical expert and defendant operated as its sales and marketing chief.  Neither party possessed the requisite business or financial acumen to handle the company's finances especially in light of its disappointing and insufficient income.  Thus, the parties agreed that defendant would be responsible for managing plaintiff's finances.  I find that the parties also agreed that while neither Christian nor defendant would be considered plaintiff's employees and that they would not receive compensation from plaintiff both also agreed that when they

---

[2] The requirements under Pennsylvania law for establishing unjust enrichment are: (1) that a benefit was conferred on defendant; (2) that defendant retained the benefit; and (3) that it would be inequitable for defendant to retain the benefit without paying its value.  Schenck v. K.E. David, Ltd, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (citations omitted). .

used their personal assets for plaintiff's benefit they would treat such transactions as advances to the company which were to be repaid.  I also find that Christian and defendant agreed that in the event that either of them needed money for personal expenses they would utilize plaintiff's assets and treat those transactions as either repayment of advances already made or as advances from plaintiff to them.  Both Christian and defendant testified that they either infused money into plaintiff or use personal asserts on plaintiff's behalf and that both received money from plaintiff for their personal use.  Their testimony was credible.  The transactions were not well documented, if at all.  However, the fact that the transactions were not well documented does not require me to conclude that defendant breached his fiduciary duty to plaintiff.  It is clear that plaintiff's operating expenses exceeded its operating income from plaintiff's inception through July 2006.  In fact, Dorman testified that the cash expenses listed on plaintiff's tax returns likely understated plaintiff's actual out-of-pocket cash expenses.  (NT, Day 3, p. 21-22).  Therefore, in order to continue operating plaintiff required regular infusions of cash and capital.  Defendant submitted substantial evidence that he frequently provided plaintiff with some of the needed income.

     Plaintiff presently argues that defendant bears the burden of establishing that the financial transactions he engaged in were for the benefit of the corporation and relies on Clement v. Clement, 436 Pa. 466, 260 A.2d 728, 729-30 (1970).  Assuming arguendo that plaintiff's assertion is correct I nevertheless conclude that defendant established that the transaction he engaged in were for plaintiff's benefit.  Plaintiff admitted that there were hundreds of electronic fund transfers from defendant's personal bank account to plaintiff.  Plaintiff further argues that I must infer that all transactions that cannot adequately be explained as serving a corporate purpose were made for defendant's personal

benefit. Plaintiff does not rely on any authority in support of this assertion. Moreover, plaintiff argues that it has proven that defendant's withdrawals exceeded his contributions to plaintiff. In my view, plaintiff has not. Plaintiff failed to give defendant credit for transfers he made and assets he purchased using his personal lines of credit. Defendant is unable to document all of his purchases because he discarded credit card receipts over the years. Nevertheless, Christian testified that plaintiff operated out of defendant's basement for several years and that he knew that defendant made numerous purchases or extended personal credit to purchase plaintiff's assets or cover plaintiff's expenses. Again, defendant proffered credible and reliable evidence which demonstrated that plaintiff's cash expenses exceeded its annual operating income. Defendant's testimony and other documentary evidence support my finding that defendant utilized personal funds to cover those shortages to the extent he was able. Therefore, plaintiff has not proven that defendant's withdrawals exceeded his contributions. I further find that any commingling of company and personal assets was pursuant to Christian and defendant's tacit and explicit agreements over the years. Defendant's representation that plaintiff owed him a minimum of $300,000.00 was not a breach of his fiduciary duty. Hence, based on the foregoing I conclude that defendant did not breach his fiduciary duty to plaintiff when he procured the Note.

    C.    <u>Remaining State Law Claims for Conversion, Tortious Interference with Contractual Relations, Misappropriation of Trade Secrets, and Replevin</u>

Plaintiff did not present argument relating to its remaining claims in its Proposed Findings of Fact and Conclusions of Law. I will, however, address the remaining claims. The allegations plaintiff states in Count III of the complaint are similar to those in Count II. Therein plaintiff asserts that defendant converted company assets for his personal use. Plaintiff did not prove by a preponderance

of evidence that defendant's use of plaintiff's funds was not by agreement or that such use was not a repayment of advances defendant made. Plaintiff's claim for tortious interference with contractual relations also is not supported by the evidence. Plaintiff did not provide any evidence that defendant intentionally and improperly interfered with plaintiff's existing contractual relations or that defendant induced or otherwise caused any third party not to perform its contractual obligations. See, Alder, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d,1175 (Pa. 1978). Plaintiff did not introduce any evidence to demonstrate that it lost business as a result of defendant's conduct. Counts V and VI of plaintiff's complaint are for misappropriation of trade secrets and replevin, respectively. Again, plaintiff did not present any evidence to demonstrate that defendant disclosed or otherwise utilized defendant's trade secrets.

IV.    **Defendant's Counterclaims**

Defendant asserts that plaintiff breached the Note and that he is due $300,000.00 because plaintiff failed to make any payments thereon. I have already found that the Note is valid and enforceable because defendant did not make misrepresentations to plaintiff to procure the Note. The Note was not procured in violation of defendant's fiduciary duty, through fraud or by mistake of fact. Therefore defendant's counterclaim for breach of the Note will be granted.

Defendant also asserts a counterclaim for breach of contract regarding additional monies he advanced plaintiff. Defendant claims that he advanced plaintiff in excess of $800,000.00. However, defendant did not produce evidence in support of this claim. Moreover, at trial defendant merely testified that he advanced the money hoping to get reimbursed. Defendant also testified that the unpaid monies allegedly due is $200,000.00 instead of the $800,000.00 sought in his counterclaim. The

evidence demonstrates that defendant provided plaintiff with cash and use of his personal assets. However, defendant did not prove by a preponderance of the evidence that there was consideration to support a valid and enforceable contract for the reimbursement of all monies he advanced other than as provided for in the Note. Due to defendant's unsophisticated and informal manner of tracking income and expenditures he is unable to document his claim for monies owed pursuant to a contract. Moreover, other than the reimbursement of expenses as provided in the Note, I cannot determine whether defendant's advances are properly considered capital paid into plaintiff or loans to be repaid. Finally, I note that defendant's claim for civil conspiracy and extortion was dismissed pursuant to my Order of July 17, 2007.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MINDBRIDGE.COM, INC. d/b/a MINDBRIDGE SOFTWARE, | : : | CIVIL ACTION NO. 06-4985 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| SCOTT V. TESTA | : | |

## ORDER

AND NOW, this 21st day of November, 2008 following a bench trial on the merits and upon consideration of the parties' post trial briefs and oral argument, and for the reasons set forth in the accompanying memorandum, IT IS HEREBY ORDERED as follows:

1. Judgment is entered in favor of defendant, Scott V. Testa, and against plaintiff in the amount of $300,000.00 plus interest from the date of breach on defendant's counterclaim for breach of the promissory Note;

2. Judgment is entered in favor of defendant with respect to plaintiff's claims for violation of the Lanham Act, breach of fiduciary duty, conversion, tortious interference with contractual relations, misappropriation of trade secrets, and replevin; and,

3. Judgment is entered in favor of plaintiff with respect to defendant's counterclaim for breach of contract for reimbursement of all monies unrelated to the promissory Note.

BY THE COURT:

/s/ Thomas N. O'Neill, Jr.
_____
THOMAS N. O'NEILL